STILLMAN AND LEILA A. BRADFIELD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bradfield v. Commissioner
Docket No. 7893-82.
United States Tax Court
T.C. Memo 1984-481; 1984 Tax Ct. Memo LEXIS 194; 48 T.C.M. (CCH) 1071; T.C.M. (RIA) 84481; September 10, 1984. Earl L. Martin, for the petitioners. Mark E. Rizik and Peter M. Ritterman, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION
CLAPP, Judge: Respondent determined deficiencies in petitioners' Federal income tax for each of the years 1978, 1979, and 1980 in the respective amounts of $5,412, $4,643, and $2,307 and also determined additions to tax under section 6653(a) [1] for each of the years 1978, 1979, and 1980 in the respective amounts of $271, $232, and $115. After concessions, the issues for decision are (1) whether *196 petitioners are entitled to deductions for purported charitable contributions for the years in issue; (2) whether petitioners are entitled to home office deductions for the years in issue; and (3) whether petitioners are liable for the additions to tax for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Stillman and Leila A. Bradfield resided in Kalamazoo, Michigan, at the time they filed their petition. In 1978, the petitioners mailed a fee to the Universal Life Church, Inc., in Modesto, California, in order to establish a local chapter of the Universal Life Church. In return for their fee, they received a form entitled Credentials of Ministry. The petitioners inserted the name and address of Leila A. Bradfield on the Credentials. In 1978, petitioners established a Rowe-Price Prime Reserve Fund shareholder account in the name of Universal Life Church/Fertile Crescent Charter No. 22775, with Stillman Bradfield and *197 Leila A. Bradfield as sole trustees. The petitioners had sole signatory authority over the shareholder account and sole authority to make withdrawals. Petitioners claim they contributed the following amounts to the account: 1978
$17,100
1979
$20,500
1980
$14,000
Petitioners claimed the above amounts as charitable contributions on their return. As of December 29, 1978, the account had a balance of $17,104. No documentary evidence was presented to substantiate subsequent deposits or balance in the Rowe-Price account. Amounts were withdrawn from the account to pay for heating, electricity, home mortgage payments and other living expenses. Each year from 1978 to 1980 the petitioners sent to the Universal Life Church, Inc., in Modesto, California, a form that asserted that they had made a charitable contribution to their charter. When the Universal Life Church in Modesto received the form, they automatically issued petitioners an "Annual Receipt of Contributions." The Universal Life Church in Modesto did not verify petitioners alleged contributions. Leila A. Bradfield was a professor in 1978 and part of 1979 and Stillman Bradfield was a professor from 1978 *198 through 1980. Both petitioners had an office at the university where they taught.Furthermore, the universities which employed them did not require either petitioner to maintain an office in their home and did not require either petitioner to perform any of their duties in their home. The petitioners, however, spent two-thirds of their working hours in their home offices which they maintained during the years in issue. Mr. Bradfield taught one of his six classes at home. The university did not require him to conduct the class in his home and the class could have been scheduled on campus. On their tax returns for 1978, 1979, and 1980, petitioners claimed charitable contributions to the Universal Life Church and home office deductions. In his notice of deficiency, respondent disallowed both the charitable contributions and the home office deductions and, in addition, determined that the addition to tax for negligence was applicable. OPINION I. Charitable Contributions
The first issue for decision is whether petitioners are entitled to any deductions for charitable contributions under section 170. Petitioners bear the burden of proving their entitlement to the deductions *199 they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They, however, have failed to satisfy their burden of proof. Petitioners contend that they made contributions to the Universal Life Church, Inc., of Modesto, California, an organization possessing a charitable exemption. Petitioners argue that the Fertile Crescent Charter No. 22775 is the same organization as the Universal Life Church, Inc. of Modesto, California. They contend they were ministers of the Church and as such were able to establish bank accounts on the Church's behalf. However, the charter document itself belies petitioners' argument. The document states that "Neither party to this agreements is the general agent of the other." The charter organization is separate and distinct from the Modesto organization and is not entitled to its tax-exempt status. Davis v. Commissioner,81 T.C. 806, 815-816 (1983), on appeal (9th Cir., Jue 25, 1984). [2]
Petitioners next contend that the contributions *200 were in fact made to the Modesto organization. Petitioners rely heavily on the testimony of Bishop Imbeau, Vice-President of the Universal Life Church, Inc., to establish that they made contributions to the Universal Life Church. Bishop Imbeau's testimony, however, was wholly unworthy of belief and we accord it no weight. Likewise, we give no credence to perfunctory "Annual Receipts of Contributions" signed by Bishop Imbeau and President Kirby Hensley. Finally, Stillman Bradfield's testimony, which was largely uncorroborated by either checks or other credible documents, is not sufficient to establish that contributions were made. Moreover, petitioners' control over the purported contributions would preclude a finding that any contributions had been made. Davis v. Commissioner,supra.Petitioners claim that the Rowe-Price Prime Reserve Fund is now closed and that all of the money in the account was transferred in 1983 to an account controlled by the Modesto organization. First, the record is by no means clear that control over the account was transferred. Secondly, even if it was, it would only indicate that the purported contribution was made in 1983 and *201 not in the years at issue. In the alternative, petitioners contend that they made contributions to Fertile Crescent Charter No. 22775, an organization that they claim should possess a charitable exemption. We find that the Fertile Crescent Charter organization does not meet the requirement of section 170(c). The evidence establishes that petitioners had control over the funds in the shareholder account and that the net earnings inured to the personal benefit of the petitioners in that they were used to pay personal living expenses. Moreover, again the petitioners have failed to substantiate what amounts, if any, were actually contributed/invested in the account. Respondent's determination is sustained. II. Home Office Deductions
The next issue is whether petitioners are entitled to home office deductions under section 280A. The section generally disallows a deduction for the business use of a home or residence. Section 280A(a). Exceptions to this general rule are set out in section 280A(c)(1) which provides: (1) CERTAIN BUSINESS USE.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively *202 used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceeding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. Petitioners contend that their home offices were their principal places of business and that they fall under the section 280A(c)(1)(A) exception. Petitioners do not contend that they fall within the ambit of either section 280A(c)(1)(B) or 280A(c)(1)(C). In determining a taxpayer's principal place of business within the meaning of section 280A(c)(1)(A), the Court must ascertain the focal point of the taxpayer's business activities. Jackson v. Commissioner,76 T.C. 696, 700 (1981). Here, the focal point of each of the petitioners' activities was the college, not their home offices. *203 See Cousino v. Commissioner,679 F.2d 604 (6th Cir. 1982), affg. a Memorandum Opinion of this Court. While petitioners spent a majority of their work time in their home offices, this work does not, in the last analysis, shift the focal point of the professor's activities from the physical location of the college to the offices in the home. [3] Moreover, the home offices were not for the convenience of the employer. Each petitioner had an office on the college campus and the college did not require the petitioners to do any work in their home. III. Section 6653(a) additions to tax
As to the section 6653(a) additions to tax, petitioner has the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Because petitioners offered no testimony or other evidence to show that their underpayment of tax was not due to negligence or intentional disregard of the revenue laws, we sustain the Commissioner's determinations. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. See also Hodges v. Commissioner,T.C. Memo. 1984-385, Harcourt v. Commissioner,T.C. Memo. 1982-621↩.
3. Storzer v. Commissioner,T.C. Memo. 1982-328; Weightman v. Commissioner,T.C. Memo. 1981-301↩.