ALFRED W. AND MARY M. HAMACHER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13052-88.     Filed March 12, 1990.

Alfred W. Hamacher and Mary M. Hamacher, pro se.
*Adolph J. Dean, Jr.,* for the respondent.

GERBER, *Judge:* Respondent, in a statutory notice of deficiency dated March 11, 1988, determined deficiencies in petitioners' 1983 and 1984 Federal income tax in the respective amounts of $863.44 and $838. The deficiencies resulted from the disallowance of home office and automobile expense deductions related to petitioner Alfred W. Hamacher's activities involving theater and acting. After concessions, the issues presented for our consideration are: (1) Whether petitioners are entitled to deductions for home office expenses under section 280A;[1] and (2) whether petitioners are entitled to deductions for automobile expenses in excess of those allowed by respondent. Petitioners concede that because the additional automobile expenses were incurred in commuting to and from the home office, those expenses are deductible only if we find that their use of the home office qualified under section 280A(c)(1).

FINDINGS OF FACT

The parties' stipulation of facts together with the attached exhibits are incorporated by this reference. Petitioners are Alfred W. Hamacher and Mary M. Hamacher, husband and wife, who resided in Atlanta, Georgia, at the time their petition was filed. References to "petitioner" in the singular refer to Alfred W. Hamacher.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to this Court's Rules of Practice and Procedure.

Petitioner earns his livelihood as a professional actor. He was awarded a bachelor of arts degree in theater and acting from Southeast Missouri State University. In 1972, under an acting fellowship from Wayne State University, petitioner earned an M.F.A. degree in acting. In 1976, petitioner and his family moved to Atlanta, Georgia, where he was hired to act by the Harlequin Dinner Theatre. He began performing in 1977 at the Alliance Theatre and numerous other major Atlanta theaters. Since then, he has performed over 40 different legitimate theater roles.

In addition to stage acting, petitioner has performed in 5 major motion pictures, 10 television commercials, and 25 radio commercials. He has worked with such well-known people as Richard Dreyfuss, Tennessee Williams, Jane Alexander, Giorgio Totsi, Ann Miller, and Gene Barry. He is a member of all three professional actors' unions: The AFTRA, related to television and radio; the Actors' Equity, related to the stage; and the Screen Actors' Guild, related to motion pictures.

During the years at issue here, 1983 and 1984, petitioner was employed by the Alliance Theatre in Atlanta, Georgia, as an independent contract actor to perform in plays on its main stage and studio stage. Petitioner was interviewed for the plays by representatives of the Alliance Theatre. Petitioner auditioned for and performed his roles at the Alliance Theatre. Although most of petitioner's contract employment during 1983 and 1984 was through the Alliance Theatre, petitioner also worked as an actor doing radio and television commercials. This acting work was separate and independent from the Alliance Theatre.

In 1979, in addition to performing, petitioner began to teach acting at Alliance Theatre's acting school, and in 1980 petitioner became the administrator of the school. He held this position during 1983 and 1984. He taught acting at the school; directed the school and its internal program; and was responsible for choosing the curriculum for all classes, selecting and directing plays and shows for the theater, and handling many of the administrative matters associated with those duties.

During 1983 and 1984, petitioner received a salary of approximately $18,000 per year in his capacity as adminis-

trator of the acting school. As a contract actor at the Alliance Theatre, petitioner received additional compensation of approximately $9,000 for 1983 and $14,000 for 1984. Petitioner's salary and nonsalary income for each year was combined and reported by Alliance on a single Form W-2. In addition to his income from Alliance, petitioner received income from other unrelated acting sources in the approximate amounts of $600 in 1983 and $1,000 in 1984.

Petitioner utilized two offices in connection with his acting and administrative activities. One was provided by the Alliance Theatre from which petitioner performed his duties as administrator of the acting school. The other office was at his home. Petitioner's theater office had a telephone, typewriter, and office furniture. However, due to space and equipment limitations at the theater, this office was not used by petitioner exclusively. During periods when petitioner was not using his office, other theater employees used petitioner's office to telephone students of the acting school regarding enrollment, to do various paperwork related to the theater, and to use his typewriter. The office hours at the theater were 9:00 a.m. to 5:30 p.m. Petitioner had access to the office during nonbusiness hours. Petitioner would generally leave the theater office at 4:30 p.m.

Petitioner's home office was in one of the 6 rooms in his apartment and measured approximately 10 by 15 feet. Petitioner's home office contained a desk, files, office supplies, a bulletin board, scripts, theater memorabilia, a reel-to-reel tape recorder, acting and research books, and wardrobe, all of which were used in connection with his acting and administrative work. During 1983 and 1984, approximately half of petitioner's time rehearsing and developing his contract stage roles was spent in his home office and the remainder was spent at the Alliance Theatre rehearsal hall. Petitioner also used his home office to receive calls regarding acting roles, prepare for auditions, and rehearse parts for commercials. Because he was regularly interrupted at his theater office by telephone calls and employees with questions, petitioner used his home office to do whatever "creative thinking" was needed to direct the theater school. Petitioner also used his home office to develop the school's curriculum, select plays for the theater,

and otherwise perform some of his duties as administrator of the Alliance Theatre acting school. The Alliance Theatre did not require that petitioner have a home office.

Petitioner spent the largest portion or percentage of his working hours at the theater office, not his home office. Based upon petitioner's estimates, he spent 20 percent of his time in his home office, 40 percent at his theater office and the remaining 40 percent acting on stage. Generally, petitioner used his home office on Saturdays and Sundays for approximately 4 hours per day, and on Mondays through Fridays for approximately 2 hours in the morning before going to work at the theater and 2 hours in the evening after coming home from working at the theater. In addition to working on school matters, petitioner would prepare for his own auditions, rehearsals, and performances during these periods. The home office was used exclusively by petitioner for purposes related to his employment as an actor and administrator of the acting school.

Petitioners, on their 1983 and 1984 income tax returns, claimed deductions in the respective amounts of $1,018 and $1,024 for what they identified as "workshop/storage" expenses. These expenses related to petitioner's home office and represented one-sixth of petitioners' rental expenses for their apartment. Petitioners also claimed $2,209 in automobile expenses for 1983 and $2,019 for 1984.

Respondent disallowed the claimed home office deductions because petitioners "failed to establish that the office was used exclusively on a regular basis as [petitioner's] principal place of business and that as an employee, [he] maintained this office for the convenience of [his] employer," as required under section 280A(c)(1)(A). Respondent also disallowed $1,563 and $1,571 of petitioners' claimed automobile expense deductions for 1983 and 1984, respectively. Respondent explained that "it has not been established that any amounts more than $646 in 1983 and $448 in 1984 were for an ordinary and necessary business expense, or were expended for the purpose designated."

## OPINION

The first issue we must consider is whether petitioners are entitled to home office deductions of $1,018 and $1,024

for 1983 and 1984, respectively. If we decide this issue in favor of petitioners, we must then consider whether petitioners are entitled to deductions for automobile expenses in excess of those allowed by respondent. Petitioners have conceded that their entitlement to additional automobile expense deductions is dependent upon a favorable decision on the section 280A issue.

Section 280A, in general, provides that no deduction is allowed with respect to the business use of a taxpayer's personal residence:

Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

See also *Baie v. Commissioner*, 74 T.C. 105, 108 (1980). Section 280A(c) contains some limited and specific exceptions to this general rule which are, in pertinent part, as follows:

SEC. 280A(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.—

(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) [as] the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

Therefore, for a deduction to be allowed under section 280A(c)(1), the provision petitioners rely upon, the taxpayer must establish that a portion of his dwelling unit is (1) exclusively used, (2) on a regular basis, (3) for the purposes enumerated in subparagraphs (A), (B), or (C) of section 280A(c)(1), and (4) if the taxpayer is an employee, the office

is maintained for the convenience of the employer.[2] In the present case, the parties disagree on whether petitioner satisfied any of these four requirements. We first consider whether petitioner's use of his home office satisfies the exclusivity requirement. We will address the remaining requirements of section 280A(c)(1) as is necessary.

The parties agree that petitioner regularly used his home office in connection with two separate and independent business activities during 1983 and 1984. Petitioner was both an independent contract actor and a salaried employee of the Alliance Theatre, responsible for administering its acting school.

Because petitioner used his home office for two business uses, this case presents a unique question: When a taxpayer uses one home office for two separate and distinct business activities, whether both business uses must be of the types described in section 280A(c)(1) in order to satisfy the exclusive use requirement of that section. This is a fundamental question and one of first impression.

In resolving this issue we are assisted by the legislative history of section 280A. Section 280A was added to the Internal Revenue Code by the Tax Reform Act of 1976[3] to provide "definitive rules relating to deductions for expenses attributable to the business use of homes." S. Rept. 94-1236 (1976), 1976-3 C.B. (Vol. 3) 807, 839. Congress was responding to cases (particularly those decided by this Court) in which a more liberal standard than that applied by the Internal Revenue Service for the deduction of home office expenses was held to be appropriate. Under these decisions, expenses connected to a home office were held deductible on the grounds that the maintenance of such office was "appropriate and helpful" to the taxpayer's business under the circumstances. See *Bodzin v. Commissioner*, 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975); *Newi v. Commissioner*, T.C. Memo. 1969-131, affd. 432 F.2d 998 (2d Cir. 1970); *Gill v. Commissioner*, T.C. Memo. 1975-3. As reflected in the Senate Report, Congress was concerned that

---

[2]Sec. 280A(c)(5) contains the further limitation that any deductions must be limited, for the years at issue here, to the excess of gross income derived from such use for the taxable year over those deductions allocable to such use, such as mortgage interest, which are permitted without regard to the business use concerned.

[3]Pub. L. 94-455, 90 Stat. 1520.

under this "appropriate and helpful" standard, expenses which were otherwise personal in nature would be allowed as business deductions:

In many cases the application of the appropriate and helpful test would appear to result in treating personal living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home. Thus, expenses otherwise considered nondeductible personal, living, and family expenses might be converted into deductible business expenses simply because, under the facts of the particular case, it was appropriate and helpful to perform some portion of the taxpayer's business in his personal residence. * * * [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185.]

Section 280A, therefore, was enacted to preclude the deduction of expenses attributable to the business use of a home office except under certain limited conditions, which are provided in section 280A(c).[4] Congress intended that only expenses which were clearly ordinary and necessary business expenses would be deductible.

Congress, in 1981, amended section 280A(c)[5] to liberalize the home office rules, particularly as they were being interpreted by the Internal Revenue Service, to permit a business expense deduction for taxpayers having more than one trade or business. Prior to the amendment, the Internal Revenue Service allowed home office deductions only if the taxpayer was using his residence as the principal place of business of his *main* business activity. See Senate discussion on H.R. 5159 (The Black Lung Benefits Revenue Act of 1981), 97th Cong., 1st Sess., 127 Cong. Rec. 31966, 31968 (1981) (statement of Sen. Dole). By adding the words "for any trade or business of the taxpayer" to the end of subparagraph (A) of section 280A(c)(1), Congress made it "clear that a taxpayer can have a principal place of business for each separate trade or business of the taxpayer and if the regular and exclusive use tests are met, can deduct the expenses attributable to using his residence as the principal place of business for *one or more such*

---

[4]Sec. 280A(b) provides an additional exception for deductions allowable without regard to their connection with the taxpayer's trade or business such as taxes, interest, and casualty losses.

[5]Black Lung Benefits Revenue Act of 1981, Pub. L. 97-119, 95 Stat. 1635.

*businesses.*" (Emphasis added.) See Staff of the J. Comm. on Taxation, Summary of H.R. 5159, The Black Lung Benefits Revenue Act of 1981, 97th Cong., 1st Sess., at 11 (J. Comm. Print 1981).

In light of the above statutory framework and legislative history, we conclude that expenses attributable to the use of a home office in conducting two or more separate business activities may be deductible. Section 280A was not intended to compel a taxpayer to physically segregate his different business activities when it would otherwise be unnecessary, cf. *Soliman v. Commissioner,* 94 T.C. 20 (1990), or to discourage an industrious individual from conducting more than one business activity out of his home. See Senate discussion H.R. 5159, *supra,* 127 Cong. Rec. at 31968. Therefore, the exclusive use requirement of section 280A(c)(1) does not demand that a home office be used exclusively in connection with only one business or only one of the types of uses enumerated in subparagraphs (A), (B), and (C). Thus, the fact that petitioner used his home office in conducting two business activities does not, in and of itself, violate the exclusive use requirement or destroy the applicability of section 280A(c)(1).

We also conclude, however, that when a taxpayer utilizes one home office in conducting numerous business activities, each and every business use must be of the type(s) described in section 280A(c)(1). Otherwise, the exclusive use requirement of that section will not be satisfied and the general nondeductibility provision of section 280A(a) will apply. Therefore, if only one of a number of uses qualifies under subparagraph (A), (B), or (C) of section 280A(c)(1), the expenses attributable to the business use of a home office will not be allowable as deductions even if the other uses are business related.[6] For example, if the taxpayer uses his home office in conducting two business activities, one which qualifies under section 280A(c)(1)(A), (B), or (C) and one which does not, the expenses attributable to the business use of the home office are not allowable as deductions. The taxpayer in this situation does not use the home office

---

[6]However, we do not imply that sec. 280A(c) will not apply if those other business uses qualify under other paragraphs of sec. 280A(c).

exclusively for one or more of the purposes described in section 280A(c)(1) and the expenses are not deductible to any extent. For purposes of sec. 280A(c)(1), where a home office is put to both qualified and nonqualified uses, we are precluded from allocating expenses between those uses for purposes of their deductibility. The exclusive use requirement of sec. 280A(c)(1) is an all-or-nothing standard which was specifically imposed by Congress to put an end to any previous rules containing allocation methods. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 184-186. Compare sec. 280A(c)(4)(C) where an allocation formula is specifically provided for purposes of sec. 280A(c)(4)(A) (when a portion of the taxpayer's residence is used in providing day-care services).

In enacting section 280A, Congress intended to preclude expenses "otherwise considered nondeductible personal, living, and family expenses" from being "converted into deductible business expenses" merely because they have some connection to a business activity. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185. There was congressional concern that taxpayers who experienced minor incremental expenses could claim deductions, and that some could deduct personal expenses under the guise of business use of the home. *Green v. Commissioner,* 707 F.2d 404, 407 (9th Cir. 1983), revg. 78 T.C. 428 (1982).[7] Accordingly, a use that fails to qualify under section 280A(c) is to be treated as personal in nature for purposes of deducting any related expenses. This would be the case irrespective of whether the use has some relation to the taxpayer's business activity. Therefore, unless the taxpayer can satisfy each and every requirement enumerated in section 280A(c)(1), no deduction allocable to the business use of a home shall be allowed. One of those requirements is that the home office be used exclusively for the types of business purposes described in paragraph (1) of subsection (c). Therefore, we hold that where the taxpayer regularly uses his home office in connection with more than one business or activity, section 280A(c)(1) may apply, provided that each business use is of the type enumerated in section 280A(c)(1) and the home

---

[7] In *Frankel v. Commissioner,* 82 T.C. 318, 329 (1984), we stated that we would no longer follow our holding in *Green v. Commissioner,* 78 T.C. 428 (1982).

office is so used exclusively. Accordingly, petitioners here must establish that each business use of their home office qualifies under section 280A(c)(1).

In the present case, petitioner used his home office in connection with his acting business and his employment with the Alliance Theatre as administrator of its acting school. We first address whether petitioner's use of his home office as administrator of the acting school satisfies section 280A(c)(1). If it does not, petitioner cannot satisfy the exclusive use requirement of section 280A(c)(1) under our above analysis. Our consideration of this issue would, therefore, be completed. The general nondeductibility rule of section 280A(a) would govern, the exception provided in section 280A(c)(1) being inapplicable.

Petitioner argues that, as administrator, he satisfies section 280A(c)(1)(A) because his home office was his "principal place of business" and his use of the home office for that purpose was "for the convenience of his employer." Respondent argues to the contrary. We agree with respondent.

In the case of an employee, section 280A(c)(1) will apply only if the home office is used "for the convenience of his employer." Sec. 280A(c)(1). Neither the statute nor the proposed regulations provide us with any guidance as to when an office will be considered used for the convenience of the employer. See sec. 1.280A-2(g)(2), Proposed Income Tax Regs., 45 Fed. Reg. 52399 (Aug. 7, 1980). Such use, however, has been found where the employee must maintain the office as a condition of his employment, *Green v. Commissioner*, 78 T.C. 428, 430 (1982), revd. on other grounds 707 F.2d 404 (9th Cir. 1983), or when the home office was necessary for the functioning of the employer's business, or necessary to allow the employee to perform his duties properly. See *Frankel v. Commissioner*, 82 T.C. 318, 325-326 (1984); *Drucker v. Commissioner*, 715 F.2d 67, 70 (2d Cir. 1983), revg. 79 T.C. 605 (1982). However, the home office cannot be "purely a matter of personal convenience, comfort, or economy" with respect to the employee. See *Sharon v. Commissioner*, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978).

The record in this case does not support petitioners' contention that the home office was used for the convenience of the Alliance Theatre acting school. It is apparent from the facts in this case that petitioner's Alliance Theatre home office use was for his own convenience, comfort, or economy. His employer did not require or expect him to do any of his work at his home. To the contrary, petitioner's employer provided him with a suitable office which was accessible to petitioner at all times, including during nonbusiness hours, the same hours petitioner used his home office. See *Drucker v. Commissioner, supra* at 70. In addition, petitioners presented no evidence that in 1983 and 1984, petitioner's employer had any knowledge of the existence of the home office or that it was being used by petitioner in doing school related work. The fact that other theater employees regularly used petitioner's theater office does not improve his position because his office was used by others only when he was out. Many people engaged in businesses and professions may find it helpful to take work home with them, but that does not automatically establish that the home office is maintained for the convenience of their employer.

Accordingly, we find that petitioner's use of his home office in connection with his employment as administrator of the acting school was not for the convenience of the Alliance Theatre, but is instead to be treated as a personal use. Consequently, petitioner's use of his home office does not comply with section 280A(c)(1). Thus, petitioner has not satisfied the exclusivity requirement of section 280A(c)(1), and, pursuant to section 280A(a), petitioner's home office deductions are not allowed except as provided in section 280A(b). It is clear from the wording of the statute and legislative history that this restrictive approach was intended and is not for us to alter.

The final issue we must decide is whether petitioners are entitled to deductions for automobile expenses in excess of those allowed by respondent. Pursuant to petitioners' concession, we find that, because the automobile expenses were incurred in commuting to and from a home office which does not qualify under section 280A(c)(1), the automobile expenses are not deductible.

To reflect the foregoing and concessions of the parties,

*Decision will be entered under Rule 155.*

