**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-106

UNITED STATES TAX COURT

KRISTEN L. POWERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7917-11S.                    Filed December 17, 2013.

<u>Jan R. Pierce</u>, Danielle Meyers (student), and Courtney Peck (student), for

petitioner.

<u>Erik W. Nelson</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $10,492 and $8,975 in petitioner's Federal income tax for 2007 and 2008, respectively (years in issue). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a).

Petitioner concedes that she is not entitled to deductions for vehicle expenses, depreciation, business use of her home, and other expenses reported on Schedules C, Profit or Loss From Business, for the years in issue.[2] The issues remaining for decision are whether petitioner is entitled to deductions claimed on Schedule A for unreimbursed employee business expenses for (1) vehicle

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for 2007 and 2008, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Petitioner failed to offer any evidence at trial in respect of deductions she claimed on Schedules A, Itemized Deductions, for certain unreimbursed employee business expenses including parking fees, tolls, travel, and meals and entertainment, nor were those items addressed in petitioner's posttrial brief. Accordingly, those matters are deemed conceded. See, e.g., McNeil v. Commissioner, T.C. Memo. 2011-150 n.3, aff'd, 451 Fed. Appx. 622 (8th Cir. 2012).

expenses in excess of the $6,975 and $7,953 amounts respondent allowed for 2007 and 2008, respectively,[3] and (2) expenses attributable to the business use of her home.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Oregon at the time the petition was filed.

## I. Petitioner's Employment With Centex Homes

Petitioner was employed as a real estate sales agent by Centex Homes (Centex) throughout 2007 and the first nine months of 2008. Petitioner was an at-will employee and was compensated by commissions earned on sales of Centex homes. Petitioner earned sales commissions of $146,524 and $79,759 while working for Centex during 2007 and 2008, respectively.

Petitioner frequently worked seven days a week for Centex. She was ranked as one of Centex's top three sales agents in Oregon for 2007 and as its top sales agent in the State for 2008.

---

[3]Respondent's allowances for vehicle expenses are apparently based on an industry standard for real estate sales agents and equal 4.76% of petitioner's gross income for 2007 and 2008.

A.  Petitioner's Daily Activities and Responsibilities

Petitioner resided in Beaverton, Oregon, approximately 15 miles from Centex's main office in the City of Portland (Portland office).  Centex regularly assigned her to work at its residential development sites in Salem, Gresham, Canby, and Hillsborough, Oregon.  Petitioner spent most of her time at the Salem and Gresham developments, which were approximately 41 and 29 miles, respectively, from the Portland office.  Salem and Gresham are 64.6 miles apart.

Petitioner used her personal vehicle for work-related transportation.  It was Centex's policy not to reimburse employees for transportation or vehicle expenses.

Petitioner routinely started her workday at the Portland office, where she met with the division president, her sales manager, and a real estate broker to conduct day-to-day business.  Petitioner did not have a workstation in the Portland office.  Petitioner normally would leave the Portland office and drive directly to Salem or Gresham to work in the sales office--either a Centex trailer or an office space in a model home.  She often found it necessary to drive between Centex developments during the day to meet with clients, finalize contracts, escort potential buyers to home sites, and attend real estate closings.  Petitioner would end her workday by returning to the Portland office.

Petitioner testified that she drove an average of 187 miles daily on round trips from the Portland office to the various Centex developments mentioned above. The record includes receipts for petitioner's gasoline purchases for one-week periods in January and May 2008, totaling $171 and $156, respectively. Petitioner testified that the expenditures were representative of her weekly gasoline purchases for 2007 and 2008.

B. Petitioner's Original Mileage Log

Petitioner testified that she kept a "messy" handwritten mileage log in her car where she recorded the miles she traveled on daily work-related trips. She further testified that it was her practice to routinely transfer the mileage from her handwritten log to an electronic spreadsheet that she kept on a Centex computer and flash drive. Petitioner recorded her daily mileage by listing the distances between the Portland office and Salem or Gresham, as the case might be, and taking odometer readings to account for the miles she drove between Centex developments, individual home sites, and business meetings during the day.

C. Petitioner's Use of Her Home for Centex Business

Petitioner resided in a home built by Centex, and she used two of the three bedrooms in the home to conduct Centex business. Specifically, one bedroom was converted to an office where she met with clients and reviewed sales contracts and

the other bedroom contained large, three-dimensional topographical tables that allowed potential clients to visualize individual home sites at Centex's developments. Petitioner testified that she lived alone during the years in issue and did not use either of the rooms in question for personal use.

D. Termination of Petitioner's Employment With Centex

During fall 2008 residential real estate prices began to fall, and many Centex clients withdrew from contracts to purchase new homes. Centex responded to adverse market conditions by delaying construction of homes under contract for as many as eight months. Recognizing that her commissions would likewise be delayed, petitioner inquired whether Centex would pay her a salary in the interim. When Centex declined, petitioner informed her sales manager that she would have to seek employment elsewhere. Although petitioner assumed that she would continue to work for Centex for the next couple of weeks, she testified that Centex immediately changed the locks at the Salem office and that she was unable to gain access to the Centex computer and flash drive containing her mileage records. Petitioner was later informed that the flash drive had been broken and that the computer she had been using could not be found.

Petitioner was self-employed as a real estate agent for the final three months of 2008.

II. <u>Petitioner's Tax Returns for 2007 and 2008</u>

Petitioner timely filed Federal income tax returns for 2007 and 2008. Petitioner attached Schedules A and Forms 2106-EZ, Unreimbursed Employee Business Expenses, to her returns, claiming deductions for vehicle expenses of $24,008 and $24,743 for 2007 and 2008, respectively.[4]

As previously mentioned, petitioner also attached Schedules C to her returns. As relevant herein, petitioner claimed deductions of $6,409 and $5,649 for business use of her home during 2007 and 2008, respectively. Petitioner attached Forms 8829, Expenses for Business Use of Your Home, indicating that she used 400 square feet or 25% of the total space in her home for business purposes. The Forms 8829 reveal that the deductions petitioner claimed were derived as a percentage of mortgage interest of $25,636 for 2007 and a

---

[4]Petitioner reported on Forms 2106-EZ that she drove 49,500 miles and 45,000 miles during 2007 and 2008, respectively, and she used standard mileage rates in computing her vehicle expenses. The Commissioner generally updates the optional standard mileage rates annually. <u>See</u> sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of 48.5 cents per mile for 2007 is set forth in Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. 936, 938. Rev. Proc. 2007-70, sec. 5.01, 2007-2 C.B. 1162, 1164, established a standard mileage rate of 50.5 cents per mile effective for transportation expenses incurred on or after January 1, 2008. The standard mileage rate for 2008 was modified midyear, however, by Announcement 2008-63, 2008-2 C.B. 114, which increased the standard rate to 58.5 cents per mile for transportation expenses paid or incurred on or after July 1, 2008.

combination of mortgage interest of $20,306 and real estate taxes of $2,290 for 2008.[5]

## III. Tax Return Preparation

Petitioner relied on a coworker to prepare her tax returns. She provided the preparer with her records, including her handwritten mileage log, and relied on him to adequately prepare the returns.

When petitioner's returns were selected for audit, a TurboTax representative assisted her. Petitioner testified that the representative advised her to "recreate" mileage logs for the years in issue using her handwritten log to provide a weekly mileage summary. Petitioner recreated the mileage logs as directed and apparently lost the handwritten log.

---

[5]Petitioner also claimed Schedule A deductions for (1) mortgage interest of $20,340 and $15,229, and (2) real estate taxes of $2,268 and $1,717, for 2007 and 2008, respectively. Although respondent disallowed the deductions for business use of home petitioner reported on Schedules C, he allowed her Schedule A deductions for mortgage interest of $21,483 and $20,306 for 2007 and 2008, respectively. We note that the notice of deficiency appears to erroneously state that respondent allowed petitioner a Schedule A deduction for real estate taxes of $2,290 for 2007, in lieu of the $1,717 amount she purportedly reported for that year. We assume respondent intended that the adjustment would apply to petitioner's Schedule A for 2008 and the $2,268 deduction petitioner claimed for real estate taxes for 2007 remains undisturbed. The parties will be expected to address the matter in computations prepared pursuant to Rule 155.

The mileage logs that petitioner reconstructed for 2007 and 2008 contain monthly and weekly summaries of the miles petitioner drove in connection with her work for Centex. The summaries include a generic description of trips taken each week (e.g., "main office, agents competition, driving between neighborhoods"). Each trip was reported to have originated in Beaverton[6] and ended in Gresham, Canby, Hillsboro, or Salem. According to the summaries, petitioner drove 49,503 miles in 2007 and 43,808 miles during January through September 2008.[7]

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner has not asserted that the burden of proof as to any relevant factual issue should shift to respondent under section 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

---

[6]Petitioner clarified at trial that she erred in listing Beaverton, rather than the Portland office, as the point of origin for her trips, and that she did not claim vehicle expenses for her daily commute to the Portland office.

[7]The mileage petitioner reported for 2008 consisted of 30,609 miles driven between January 1 and June 30, 2008, and 13,199 miles driven between July 1 and September 30, 2008.

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense, but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A deduction normally is not allowed, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, an employee business expense is not ordinary and necessary if the employee is entitled to reimbursement from his or her employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272.

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes, inter alia, passenger automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence

corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., supra, provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides that the strict substantiation requirements of section 274(d) for vehicle expenses must be met even where the optional standard mileage rate is used. Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra. If a taxpayer's records have been destroyed

or lost due to circumstances beyond his or her control, the taxpayer may substantiate expenses subject to section 274(d) by making a reasonable reconstruction of the expenditures through other credible evidence. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer is required to reconstruct pertinent records to the fullest extent possible. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12, 2007 WL 109055. If no other documentation is available, the Court may, but is not obliged to, accept credible testimony of a taxpayer to substantiate a deduction. See Boyd v. Commissioner, 122 T.C. at 320 (citing Watson v. Commissioner, T.C. Memo. 1988-29); Freeman v. Commissioner, T.C. Memo. 2009-213, 2009 WL 2958663.

I. Vehicle Expenses

Petitioner elected to apply standard mileage rates and claimed deductions for vehicle expenses of $24,008 and $24,743 for 2007 and 2008, respectively. The record includes reconstructed mileage logs that purport to show the number of miles that petitioner drove in connection with her employment with Centex.

Petitioner's testimony at trial describing her daily activities and responsibilities during the course of her employment with Centex was forthright and credible. We are satisfied from her testimony and other evidence in the record

that she traveled substantial (but relatively routine) distances daily from Centex's office in Portland to various Centex developments (frequently Salem and Gresham) and back. We likewise are convinced that the logs that petitioner reconstructed during the examination process generally are representative of the miles that she drove for business purposes, although they are inexact inasmuch as they comprise only weekly and monthly summaries. Under the circumstances, giving appropriate weight to petitioner's reconstructed mileage logs, her testimony, and the sampling of gasoline receipts in the record, we conclude that she has adequately substantiated that she drove 115 miles per day, six days a week, or a total of 35,880 and 26,910 miles in connection with her work for Centex during 2007 and the first nine months of 2008, respectively.[8]

## II.  Business Use of Home

A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year. Sec. 280A(a). Expenses attributable to a home office are excepted from this general rule, however, if the expenses are allocable to a portion of the dwelling unit which is exclusively used

---

[8]We conclude that petitioner drove 18,030 miles from January 1 to June 30, 2008, and 8,880 miles from July 1 to September 30, 2008. Petitioner did not substantiate the miles she purportedly drove as a self-employed real estate agent beginning October 1, 2008, through the end of that year.

on a regular basis as the principal place of business for the taxpayer's trade or business. Sec. 280A(c)(1); Lofstrom v. Commissioner, 125 T.C. 271, 277-278 (2005). If the taxpayer is an employee, the exception under section 280A(c)(1) will apply only if the exclusive use of the office space is for the convenience of the taxpayer's employer. Sec. 280A(c)(1); Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990). As with all other business expenses, the taxpayer must establish that the expense has been paid or incurred and the amount of the expense. Sec. 6001.

Petitioner reported that she used 25% of her home for business purposes and claimed deductions of $6,409 and $5,649 for business use of her home in 2007 and 2008, respectively. These amounts represent 25% of mortgage interest that petitioner reported on Form 8829 for 2007 and a combination of mortgage interest and real estate taxes that petitioner reported on Form 8829 for 2008.

Although we are convinced that petitioner otherwise was entitled to deductions for the business use of her home, respondent determined in the notice of deficiency that petitioner was entitled to deductions for mortgage interest and real estate taxes only on Schedule A for the years in issue. Petitioner did not contest the latter adjustments, and she did not offer any evidence in respect of the difference between the home mortgage interest of $25,636 she reported on Form

8829 for 2007 and the $21,483 for mortgage interest that respondent allowed. Under the circumstances, we conclude petitioner is not entitled to include home mortgage interest and real estate tax payments in computing deductions for the business use of her home for 2007 or 2008.

Petitioner did not offer any evidence in respect of her monthly or yearly utility expenses or information related to the depreciation of her home that would allow us to estimate the amounts allowable as deductions for the business use of her home.  See Cohan v. Commissioner, 39 F.2d at 543-544; see also Williams, 245 F.2d at 560.  Accordingly, we sustain respondent's determination disallowing the deductions petitioner claimed for business use of her home.

To reflect the foregoing,

Decision will be entered

under Rule 155.